## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**CHADWICH GABLE,**

     **Plaintiff,**

**v.**                          **Case No.: 4:23-cv-489-MW-MAF**

**WALT MCNEIL, in his official capacity**
**as SHERIFF, LEON COUNTY, FLORIDA,**
**RYAN KESSLING, in his individual capacity,**

     **Defendants.**

_____/

## DEFENDANT SHERIFF MCNEIL'S MOTION TO DISMISS COUNTS I AND IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE

Defendant, **WALT MCNEIL, in his official capacity as SHERIFF, LEON COUNTY, FLORIDA** ("Sheriff McNeil"), through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) and N.D. Fla. Loc. R. 7.1, moves to dismiss Counts I and IV of Plaintiff's Second Amended Complaint, with prejudice, and in support, states:

1.     On August 13, 2023, Plaintiff filed a Complaint in state court against Sheriff McNeil, in his official capacity, and then-Deputy Ryan Kessling in relation to Plaintiff's arrest on or around November 14, 2019. (Doc. 1-1, pp. 5-16).

2.     On November 8, 2023, Sheriff McNeil timely removed the action to this Court on the basis of the existence of a federal question. (Doc. 1).

3.      On November 15, 2023, Sheriff McNeil filed a Motion to Dismiss (Doc. 4) two claims brought against him, one for Negligence (Count I) and the other for Excessive Force brought under 42 U.S.C. § 1983 (Count IV). That same day, Defendant Sheriff McNeil filed an Answer and Affirmative Defenses (Doc. 5) in response to the claim for Battery (Count III).

4.      On December 7, 2023, Plaintiff filed an Amended Complaint with minimal changes to the initial Complaint. (Doc. 8). The Sheriff's Motion to Dismiss was thereafter denied by this Court as moot. (Doc. 11).

5.      Sheriff McNeil once again moved to dismiss part of the Amended Complaint, specifically, Plaintiff's claim for Negligence (Count I) for failure to state a claim and his claim for Excessive Force (Count IV) because the Sheriff cannot be held liable under § 1983 solely for the acts of his agents or employees and Plaintiff failed to allege sufficient facts to state a claim for *Monell* liability. (Doc. 17).

6.      On January 31, 2024, this Court entered an Order granting the Sheriff's Motion to Dismiss and allowing Plaintiff until Wednesday, February 14, 2024, to file a Second Amended Complaint. (Doc. 26). The Court noted that the Complaint's deficiencies were clearly identified in the dispositive motions and if Plaintiff ignored any of the arguments, Plaintiff would do so at his own peril. (Id. p. 1).

7.     The Second Amended Complaint has minimal changes from Plaintiff's First Amended Complaint, none of which address the arguments raised in Sheriff McNeil's first two dispositive motions.

8.     Accordingly, Sheriff McNeil moves to dismiss Count I and Count IV of the Second Amended Complaint for the reasons discussed herein.

## **MEMORANDUM OF LAW**

### I.     **Legal Standard– Failure to State a Claim**

A court may dismiss a claim for the "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P.* 12(b)(6). To survive a motion to dismiss on such grounds, a plaintiff must have provided the grounds for entitlement to relief by more than "labels and conclusions," and "a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) (*citing Iqbal*, 556 U.S. at 678). Further, a complaint must provide sufficient notice of the claim and the grounds upon which

it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (quoted in *Twombly*, 550 U.S. at 557-58).

## II.   Plaintiff Failed to State a Cognizable Claim for Negligence Against the Sheriff

In Count I, Plaintiff brings a claim for Negligence against Sheriff McNeil, in his official capacity. However, the allegations pled in support of the claim fail to state a claim for negligence.

To be sure, Plaintiff alleges:

- Defendant SHERIFF knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.
- Kessling and other deputies at the scene with Plaintiff, as described above, were acting inside the course and scope of their employment with Defendant Sheriff at all times pertinent hereto.
- Defendant SHERIFF MCNEIL owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant SHERIFF MCNEIL and/or Defendant had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.
- Defendant SHERIFF owed a duty of care to Plaintiff such that he would not be injured by the actions of his deputies, like Kessling. Defendant breached that duty of care.
- Defendant SHERIFF further breached its duty to ensure that Plaintiff received proper medical care but breached this duty by preventing/blocking Plaintiff from the care he needed.
- The actions of Defendant SHERIFF and a complained of herein were "operational" functions.

(Doc. 29, ¶¶ 16-20).

Importantly, Plaintiff wholly fails to identify the specific conduct which forms the basis of his negligence claim, who allegedly committed that conduct, and why Sheriff McNeil should be liable. Instead, Plaintiff merely recites elements of negligence, which is insufficient to survive a motion to dismiss. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (*citing Twombly*, 550 U.S. at 555).

Notably, "[d]irect liability and vicarious liability are very different concepts." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022). Though the claim is brought against Sheriff McNeil in his official capacity, it remains unclear under what theory the negligence claim is brought. There are no facts to suggest that Sheriff McNeil himself was present on the scene of the incident. Accordingly, there are no facts to suggest that the negligence claim is based under a theory of direct liability. For the same reasons, there is no basis for Plaintiff's assertion that a special duty of care existed between Sheriff McNeil and Plaintiff. *See Wallace v. Dean*, 3 So. 3d 1035, 1048-53 (Fla. 2009). However, the allegations within Count I refer to Sheriff McNeil owing a duty, breaching said duty, and causing damages to Plaintiff. To the extent Plaintiff intends to bring a claim against the Sheriff for vicarious liability, or, under the theory of *respondeat superior* based on alleged actions/inactions of his officers or employees, allegations of (1) what the Sheriff knew or should have known, (2) what duty, if any, the Sheriff owed to Plaintiff, or (3) that the Sheriff breached a duty owed to Plaintiff are wholly irrelevant to the claim. *Holland*, 50

F.4th at 1094-95. The only allegations Plaintiff made which remotely pertain to any officers or agents of the Sheriff within the count are that (1) "Kessling and other deputies at the scene with Plaintiff, as described above, were acting inside the course and scope of their employment with Defendant Sheriff at all times pertinent hereto" and (2) "Defendant SHERIFF owed a duty of care to Plaintiff such that he would not be injured by the actions of his deputies, like Kessling." This is simply not enough to state a claim for negligence under a theory of vicarious liability.

Even giving the Second Amended Complaint the most liberal construction, it remains unclear whether Plaintiff is intending to bring a negligence claim based on Deputy Kessling's alleged use of excessive force or alleged failure to allow Plaintiff access to medical care. This, because Plaintiff makes reference to the Sheriff's alleged duties to (1) prevent injury from the acts of his officers and (2) ensure Plaintiff received proper medical care. To the extent the claim is based on the "negligent commission" of excessive use of force, there is no such thing. *Greer v. Ivey*, 767 Fed. Appx. 706, 713 (11th Cir. 2019). To the extent the claim is based on the failure of the Sheriff's officers/employees to provide Plaintiff access to medical care, it is unclear whether this is intended to be a claim for medical negligence, and thus, subject to additional pre-suit requirements. *See Fla. Stat.* § 766.106. To the extent it is not, Plaintiff wholly failed to provide "fair notice" of the nature of the claim, and the "grounds" on which the claim rests. *Twombly*, 550 U.S. at 556.

Furthermore, Plaintiff's "negligence" claim against the Sheriff purports to be based either on an intentional act[1] or the discretionary policy decisions of the Sheriff[2], which are immune from tort liability. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001).

For all the above reasons, Plaintiff failed to state a cognizable claim for negligence against Sheriff McNeil.

### III. Sheriff McNeil May Not Be Held Vicariously Liable Under 42 U.S.C. § 1983 for the Excessive Force of His Agents or Officers and Plaintiff Failed to State a Claim for *Monell* Liability

In Count IV, Plaintiff alleges that the Sheriff, "through Kessling, used excessive force against Plaintiff." (Doc. 29, ¶ 34). Plaintiff further alleges "Defendants are liable, jointly and severally, to Plaintiff, for their conduct, individually and in concert, in violating Plaintiff's rights under the Fourth and Fourteenth Amendments." (Id. at ¶ 37).

---

[1] *see* Doc. 29, ¶ 12 ("After paramedics arrived on the scene, Kessling then refused to allow the paramedics to treat Plaintiff's broken arm or treat the dog bite … Kessling outwardly complied but once they reached the hospital, he again refused to allow Plaintiff's arm to be treated, stating it had happened prior to the incident described above and was not his responsibility).

[2] *see* Doc. 29, ¶ 13 ("Once Plaintiff was returned to the jail, he was seen by one medic in the jail who also did not set Plaintiff's broken arm, and merely issued a sling. Upon information and belief, Defendant's jail did not have the capacity or ability to set Plaintiff's arm as that treatment would have been provided at the hospital. Because the hospital was the proper place to treat Plaintiff's arm and Defendant did not have the ability to do so properly, Plaintiff's arm was not properly treated…")

It is well-established that a governmental entity, or the Sheriff in his official capacity, "may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Id.*

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). To state a claim against an entity for *Monell* liability, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the Sheriff had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *Johnson v. Darnell*, 781 Fed. Appx. 961, 964 (11th Cir. 2019).

Here, Plaintiff's allegations, masquerading as a *Monell* claim, actually assert a claim based on *respondeat superior* for Deputy Kessling's alleged use of excessive force. While Plaintiff uses conclusory allegations of a custom/practice of excessive force (Doc. 29, ¶ 45), there are no facts to support this bare-boned allegation. To be

8

sure, Plaintiff does not clearly identify any official policy of the Sheriff that allegedly caused a constitutional violation or a practice of the Sheriff that was so "settled" and "permanent" that it took the force of law. *Torres-Bonilla v. City of Sweetwater*, 805 Fed. Appx. 839, 840 (11th Cir. 2020) (internal citations omitted).

Plaintiff's allegation that "upon information and belief" this "was not the first time that Kessling engaged in the excessive use of force" (Doc. 29, ¶ 45) wholly fails to plausibly establish a policy or custom on behalf of the Sheriff. Indeed, recent case law from the Eleventh Circuit advises that in the absence of a showing that a particular policy or custom itself is unconstitutional, "proving that a policy (or absence thereof) or custom caused a constitutional harm would require [Plaintiff] to point to multiple incidents." *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1299 (11th Cir. 2023) (internal citations omitted). Plaintiff has not pointed to any other incidents. In addition to establishing the existence of a custom or policy, Plaintiff must also establish that said actions were "taken with the requisite degree of culpability ... with deliberate indifference to its known or obvious consequences." *Trammell v. Paxton*, 322 Fed. Appx. 907, 911 (11th Cir. 2009). Plaintiff's claims are conclusory and unaccompanied by any facts to support a reasonable inference that the Sheriff knew of constitutional violations and was deliberately indifferent by failing to take any action. To establish the third prong, "[a] plaintiff must prove causation by demonstrating that the municipality's 'deliberate conduct ... was the

'moving force' behind his injury....'" *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004) (internal citations omitted). Plaintiff alleged no facts to support the proposition that any policy or custom of the Sheriff was the "moving force" behind any use of force employed by Kessling or another one of Defendant Sheriff's deputies.

Alternatively, Plaintiff argues that Sheriff McNeil "ratified" Kessling's actions in failing to investigate or discipline him. Plaintiff alleges, "The failure to investigate or discipline Kessling shows that Defendant Sheriff found Kessling's actions acceptable and in accordance with the Sheriff's policies and that his actions are the way things are done within the Defendant." (Doc. 29, ¶ 45). This is wholly insufficient to state a claim under a ratification theory of *Monell* liability. To do so, Plaintiff must establish the Sheriff had an opportunity to review the alleged unconstitutional conduct, did so, and agreed both with the decision and the decision's basis. *Jennings v. Stewart*, Case No. 4:20-CV-58-AW-MAF, 2020 WL 13681221, at *3 (N.D. Fla. Sept. 17, 2020) (*citing Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015)). Plaintiff's theory that the lack of an investigation establishes ratification holds no water. "[A] single failure to investigate an incident is insufficient to establish ratification…" *Salvato*, 790 F.3d at 1297. Moreover, action (or non-action) after an incident has concluded could not possibly have *caused* the incident.

Plaintiff also tries to proceed on the *Monell* claim under the theory that Deputy Kessling was a "delegated final policymaker." (Doc. 29, ¶ 46). Plaintiff provides no factual support for this inherently implausible claim. Plaintiff attempts to support final policy-maker status by claiming "[t]here was no supervisor who had to approve or otherwise authorize the actions by Kessling and he had the delegated final policymaking authority to take the unconstitutional actions involving Plaintiff as alleged herein … Kessling's actions were not constrained by official policies nor were they subject to review." (Id.). Yet, the fact that a supervisor or someone with the power to review conduct was not on scene does not make Deputy Kessling a final policymaker. Further, Plaintiff's own "factual allegations" here are entirely inconsistent with Plaintiff's other factual allegation that Sheriff McNeil had the power to investigate and discipline Deputy Kessling for his conduct but failed to do so. *See Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2019 WL 8895224, at *2 (S.D. Fla. Mar. 7, 2019) ("Either a fact or conclusion is alleged or isn't.").

Plaintiff's claims sound as the proverbial "legal conclusions couched as factual allegations" (*Iqbal*, 556 U.S. at 678 (internal citations omitted)) and do not provide any real facts to make plausible that a custom or practice of excessive force existed, never mind that a custom or practice caused an alleged constitutional deprivation. Because municipal liability is limited to actions for which the

11

municipality is actually responsible (*Salvato*, 790 F.3d at 1297 (internal quotations and citations omitted)), and Plaintiff failed to identify any actions of the Sheriff that caused an alleged constitutional violation, the § 1983 claim against Sheriff McNeil must be dismissed.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant, WALT MCNEIL, in his official capacity as SHERIFF, LEON COUNTY, FLORIDA, respectfully requests that this Court dismiss Count I and Count IV of the Second Amended Complaint, with prejudice, and grant such other relief this Court deems just and proper.

Dated this 29th day of February 2024.

Respectfully submitted,

*/s/ Christen A. Petruzzelli*
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
mspellman@sniffenlaw.com
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
mcarson@sniffenlaw.com
**CHRISTEN ANN PETRUZZELLI**
Florida Bar Number: 1039528
cpetruzzelli@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

This document complies with word limits set forth in N.D. Fla. Loc. R. 7.1(F) and contains 2,814 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

*/s/ Christen A. Petruzzelli*
**CHRISTEN A. PETRUZZELLI**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 29th day of February 2024, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, Tallahassee Division using the CM/ECF system.

*/s/ Christen A. Petruzzelli*
**CHRISTEN A. PETRUZZELLI**