## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**CHADWICH GABLE,**                          **CASE NO.: 4:23-cv-489-MW-MAF**

      **Plaintiff,**

**v.**

**WALT MCNEIL, in his Official Capacity as
SHERIFF, LEON COUNTY, RYAN
KESSLING, in his Individual Capacity,**

      **Defendants.**
_____/

## THIRD AMENDED COMPLAINT

Plaintiff, CHADWICH GABLE, hereby sues Defendant, WALT MCNEIL in his Official Capacity as SHERIFF, LEON COUNTY, and RYAN KESSLING, in his Individual Capacity, and alleges:

## NATURE OF THE ACTION

1.      This is a civil action seeking damages against Defendants brought under the common law of the State of Florida, and the Fourth and Fourteenth Amendments to the United States Constitution, brought through 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution and laws of the United States, and by 42 U.S.C. §1988 which authorizes the award of

attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

2.    This is an action involving claims which are, individually, in excess of Fifty Thousand Dollars ($50,000).  This case was removed to this Court by the Defendant.

## PARTIES

3.    At all times pertinent hereto, Plaintiff, CHADWICH GABLE, has been a resident of LEON County, FL. He is *sui juris*.

4.    At all times pertinent hereto, Defendant, WALT MCNEIL in his official capacity, has been the Sheriff of Leon County, Florida.  He operates the LEON COUNTY SHERIFF'S OFFICE in Leon County within the geographical boundaries of this Court.

5.    At all times pertinent hereto, Defendant, RYAN KESSLING in his individual capacity, was a resident of the State of Florida and was employed by LEON COUNTY SHERIFF'S OFFICE as a Deputy. He is thus sui juris.

## CONDITIONS PRECEDENT

6.    Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein, were submitted to Defendant Sheriff pursuant to 768.28(6), Florida Statutes.

## <u>STATEMENT OF THE ULTIMATE FACTS</u>

7.    On November 14, 2019, while Plaintiff was being served with a warrant, Defendant Sheriff's deputies engaged in a pursuit of Plaintiff which culminated in Plaintiff running from the deputies, jumping over a fence and falling over the fence as a result and breaking his arm. Defendant Kessling was one of the deputies pursuing Plaintiff.

8.    After his fall, Plaintiff jumped up to run again.  However, prior to the officers having any physical contact with Plaintiff, they released their K-9 on him and the dog knocked Plaintiff to the ground after which he again fell on his arm resulting in excruciating pain to Plaintiff.

9.    Plaintiff was on the ground again by the time the deputies, including Kessling, got to him. While on the ground, Plaintiff was screaming in pain and told the deputies that his arm was broken.

10.    When the deputies, including Kessling, arrived where Plaintiff was lying face down on the ground, despite being advised that Plaintiff's arm was broken and being told by Plaintiff that he was in severe pain due to the break as he was screaming in pain, Kessling jumped on Plaintiff, snatched his arms behind his back and cuffed him anyway.

11.    While Plaintiff was on the ground in handcuffs, Kessling and another deputy with Defendant then proceeded to pull his pants down and battered him by

hitting him in the ribs and kneeing him while he was restrained while he was still lying face down in the grass.  At the same time, the dog used in pursuit of Plaintiff was directed to repeatedly bite Plaintiff on his bare buttocks, without restraint, while the deputies, including Kessling, were either laughing or telling the dog to "get him."

12.     Kessling then dragged Plaintiff to the waiting medics/EMS.  While he was  dragging Plaintiff, one deputy asked another deputy, which other deputy is believed to be Kessling, if he had remembered to retrieve his body camera from where he had tossed it during the assault and battery.

13.     After paramedics arrived on the scene, Kessling then refused to allow the paramedics to treat Plaintiff's broken arm or treat the dog bites, instead transporting him directly to the jail and he then left.  The booking officer, however, called Kessling back to the Jail and instructed him to take Plaintiff to the hospital for treatment of his possible broken arm and dog bites. The booking officer told Kessling that he could not just leave Plaintiff at the Jail without getting proper treatment for him.

14.     Kessling outwardly complied but once they reached the hospital, Kessling again refused to allow Plaintiff's arm to be treated, telling the hospital staff that they could treat the dog bites but not his arm because whatever happened to his arm occurred prior to the incident described above and was not his or the Sheriff's

Office's responsibility. Plaintiff was returned to the jail again without his broken arm being treated or properly set.

15.    Once Plaintiff was returned to the jail, since the hospital did nothing to treat Plaintiff's broken arm, he was seen by one medic in the jail who also did not set Plaintiff's broken arm, and only gave him a sling.  Defendant's jail did not have the capacity or ability to set Plaintiff's arm as that treatment would have been provided at the hospital.  Because the hospital was the proper place to treat Plaintiff's arm and Defendant did not have the ability to do so, Plaintiff's arm was not properly treated then and has still not been properly treated to this day.  He is still in pain.

16.    Once Plaintiff arrived back at the jail from the hospital, he was placed in a regular pod, not in Defendant's medical unit, in which he remained for approximately six months.

17.    During that six month time period, Plaintiff frequently, at least weekly, asked for medical care from multiple correctional officers, including correctional officer supervisors, i.e., sergeants, lieutenants and captains.  Their general response was to put in a request to see "medical."  On multiple occasions, they said that there was nothing they could do to help him.  On other occasions, when he was permitted to go to Defendant Sheriff's medical unit, he was given over the counter pain medicine and told there was nothing they could do as he had already been to the hospital, even after notice that the hospital did not treat his arm.

18.     During that six month time period, a friend outside the jail who was familiar with Plaintiff's broken arm and Kessling's refusal to allow the hospital to treat it, repeatedly called Defendant Sheriff's jail asking for medical care for Plaintiff's arm, including getting him to an outside orthopedic specialist.  This friend called several if not multiple times per week and talked to multiple people in the jail asking for treatment for Plaintiff's arm.  Since Plaintiff had already been taken to the hospital and was not treated there, she was told by the correctional officers, including supervisors, that there was nothing they could do about Plaintiff's arm. At least once around one to one and one-half months into Plaintiff's incarceration, Plaintiff's friend talked to the captain over the jail and was told by him that there was nothing that could be done and he should not have gotten himself into trouble to begin with to be in the jail.  She talked to multiple correctional officers and supervisors and at some point was told that he was going to be leaving the jail so treatment could not be performed.

19.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**COMMON LAW NEGLIGENCE**
**Against Defendant SHERIFF WALT MCNEIL**

20.     Paragraphs 1 through 18 are re-alleged and incorporated herein by reference.

21.    This count sets forth a claim against Defendant Sheriff, in his official capacity, for common law ordinary negligence.  This claim is against Defendant Sheriff for the failure to obtain medical care for Plaintiff after his arm was injured as set forth above.

22.    The failure to obtain medical care started with Defendant Kessling telling the medics/EMS at the scene where Plaintiff broke his arm not to treat his arm and dog bites and then telling the hospital that Plaintiff's arm should not be treated because he and the Sheriff's Office were not responsible for that injury and then continued for the six month period that Plaintiff was in the jail.  The original denial of medical care at the hospital, caused by Kessling, plagued Plaintiff in his ability to obtain medical care thereafter because the hospital already denied him care, which the jail staff stood by and used as justification not to obtain additional care for Plaintiff thereafter.

23.    The Defendant Sheriff, through the captain who spoke to Plaintiff's friend, coupled with the multiples of Defendant's employees whom Plaintiff and his friend contacted about Plaintiff's ongoing medical problems with his arm, should have known that Plaintiff was within a zone of risk related to contact with its agents/employees and that he would continue to suffer by not being treated for his injury to his arm and is vicariously liable for the actions of Kessling and other employees in the jail.

24.     Alternatively, Defendant Sheriff is directly liable for the failure to treat Kessling through notice to the captain over the jail, whose actions can fairly be attributed to the Sheriff due to the high level position he held within the jail.

25.     Kessling and other deputies/correctional officers, who all participated in denying Plaintiff medical care, were acting inside the course and scope of their employment with Defendant Sheriff at all times pertinent hereto.  This Count is pled in the alternative.

26.     Defendant Sheriff owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant Sheriff and/or Defendant had a special relationship with Plaintiff due to the fact that he was an arrestee and then an inmate, relying on Defendant to provide the medical care and treatment he needed while he was housed in the jail, and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof and the failure to obtain medical treatment for Plaintiff.

27.     Defendant owed a duty of care to Plaintiff such that he would not be injured by the actions of his deputies, like Kessling and the correctional officers once Plaintiff was housed in the jail.  Defendant breached that duty of care.

28.    Defendant breached its duty to ensure that Plaintiff received proper medical care and breached this duty by preventing/blocking Plaintiff from the care he needed.

29.    The actions of Defendant and complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

30.    As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including lost income, emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, bodily injury, inconvenience and hurt, all because of the actions of Defendant Sheriff and is therefore entitled to compensatory damages. These damages occurred in the past, at present and will certainly occur in the future.

<b>COUNT II<br>BATTERY<br>Against Defendant KESSLING</b>

31.    Paragraphs 1 through 18 are realleged and incorporated herein by reference.

32.    This count sets forth claims against Kessling for common law battery. This count is pled in the alternative, and for the purposes of this count alone,

Defendant Kessling was acting outside the course and scope of his employment with Defendant SHERIFF.

33.    Plaintiff is entitled to relief against Defendant Kessling in that this Defendant, without justification or the Plaintiff's consent, touched Plaintiff's person in an offensive and harmful manner after Plaintiff fell to the ground, kneeing and hitting him, participating in if not inciting the K-9 to attack and bite him, and cuffing him after he told Kessling that his arm was broken, which caused Plaintiff further pain. Defendant intended to batter the Plaintiff. This unlawful touching of Plaintiff was also accomplished by Defendant without any justification. Defendant intended to cause harm to Plaintiff and/or knew or should have known there was substantial certainty that harm would occur.

34.    Defendant acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights and safety.

35.    As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future.

**COUNT III**
**BATTERY**

**Against Defendant SHERIFF WALT MCNEIL**

36.     Paragraphs 1 through 18 are realleged and incorporated herein by reference.

37.     This count sets forth a claim against Defendant SHERIFF for common law battery. For the purpose of this Count alone, Defendant Kessling and the other deputies at the scene of the arrest with Kessling, as alleged herein, were acting inside the course and scope of their employment with Defendant SHERIFF

38.     Plaintiff is entitled to relief against Defendant SHERIFF in that through his deputies, officers, employees and agents, including Defendant Kessling, without justification or the Plaintiff's consent, touched Plaintiff's person in an offensive and harmful manner after Plaintiff fell to the ground, kneeing and hitting him, participating in if not inciting the K-9 to attack and bite him, and cuffing him after he told Kessling that his arm was broken, which caused Plaintiff further pain. Defendant, through his agents, intended to batter the Plaintiff.  This unlawful touching of Plaintiff was also accomplished by Defendant without any justification. Defendant intended to cause harm to Plaintiff and/or knew or should have known there was substantial certainty that harm would occur.

39.     Defendant SHERIFF, through his agents and/or employees, intended to hit, knee, and otherwise batter Plaintiff.   This unlawful touching was also accomplished by Defendant SHERIFF, through his agents and/or employees

touching or coming in contact with Plaintiff without any justification and in the absence of cause to touch or contact Plaintiff. Defendant SHERIFF intended to cause harm to Plaintiff or knew or should've known there was substantial certainty that harm would occur.

40.     The actions by Defendant Kessling and other deputies were committed as agents of Defendant SHERIFF and were committed within the course and scope of their employment/agency with Defendant SHERIF.

41.     As a direct and proximate cause of Defendant SHERIFF's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future.

**COUNT IV**
**FOURTH AND FOURTEENTH AMENDMENT VIOLATION-**
**EXCESSIVE FORCE**
**AGAINST DEFENDANT SHERIFF**

42.     Plaintiff re-alleges paragraphs 1 through 19 above and incorporates those allegations in this Count. This count is pled in the alternative.

43.     This count sets forth a claim against Defendant for violation of the Fourth and Fourteenth Amendments of the U.S. Constitution, based on excessive force, which claims are brought through 42 U.S.C. §1983.

44.     Defendant, through Kessling and other deputies on scene, used excessive force against Plaintiff during his arrest, as set forth in part above, without justification, consent, cause or lawful authority.

45.     Defendant intended to damage Plaintiff, in that his harmful acts were purposeful, and also in that such acts were substantially certain to result in injury and harm.

46.     The Defendant acted to violate Plaintiff's right not to be subjected to the excessive use of force under the Fourth and Fourteenth Amendments to the United States Constitution.  These violations were of the type and character as to which any reasonable person would be aware.

47.     Defendants are liable, jointly and severally, to Plaintiff, for their conduct, individually and in concert, in violating Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

48.     Defendant misused his power, possessed by virtue of state law and made possible only because of the authority of state law.  The violation of Plaintiff's rights, as described in part above, occurred under color of state law, and is actionable under 42 U.S.C. §1983.   Defendant is a person under applicable law.

49.     The foregoing actions of Defendants were willful, wanton, and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification.

50.     The use of excessive force by Defendants is not part of the penalty that citizens have to pay prior to, during and/or after being charged with a criminal offense, and determines a cognizable claim in violation of the Fourth Amendment.

51.     Based upon the facts presented to Defendant and the applicable law, no reasonable person, company, government agency or law enforcement agency could have concluded that there existed any reasonable cause or legal basis for battering Plaintiff after he was subdued by kneeing and hitting him, participating in if not inciting the K-9 to attack and bite him, and cuffing him after he told Kessling that his arm was broken.  The law was settled and clearly established that the actions of Defendant constituted excessive force under the Fourth and Fourteenth Amendments at the time the acts were engaged in.

52.     The actions or inactions of Defendant, set forth in part above, constituted deliberate indifference and/or reckless disregard for Plaintiff's constitutional rights when Defendants knew of and disregarded Plaintiff's rights, and thus Defendant's actions or inactions constituted the use of excessive force.

53.     Defendants were acting under color of state law at all pertinent times. Their use of excessive force violated the proscription thereof set forth in the Fourth and Fourteen Amendments.  Defendant misused his power, possessed by virtue of state law and made possible only because of the authority of state law.

54.     Kessling was a delegated final policymaker regarding the force used during the arrest and whether the dog was permitted to attack and bite Plaintiff. There was no supervisor who had to approve or otherwise authorize the actions by Kessling and he had the delegated final policymaking authority to take the unconstitutional actions involving Plaintiff as alleged in this paragraph.  Moreover, Kessling's actions were not constrained by official policies nor were they subject to review or supervision.

55.     The foregoing actions of Defendant were willful, wanton, and in reckless disregard of Plaintiff's rights.

56.     As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff under this count.

**COUNT V**
**FOURTH AND FOURTEENTH AMENDMENT VIOLATION-**
**EXCESSIVE FORCE**
**AGAINST DEFENDANT KESSLING**

57.     Plaintiff re-alleges paragraphs 1 through 19 above and incorporates those allegations in this Count. This count is pled in the alternative.

58.     This count sets forth a claim against Defendant Kessling for violation of the Fourth and Fourteenth Amendments of the U.S. Constitution, based on excessive force, which claims are brought through 42 U.S.C. §1983.

59.     Defendant used excessive force against Plaintiff, as set forth in part above, without justification, consent, cause or lawful authority.

60.     Defendant intended to damage Plaintiff, in that his harmful acts were purposeful, and also in that such acts were substantially certain to result in injury and harm.

61.     The Defendant acted to violate Plaintiff's right not to be subjected to the excessive use of force under the Fourth and Fourteenth Amendments to the United States Constitution.  These violations were of the type and character as to which any reasonable person would be aware.

62.     Defendants are liable, jointly and severally, to Plaintiff, for their conduct, individually and in concert, in violating Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

63.     Defendant misused his  power, possessed by virtue of state law and made possible only because of the authority of state law.  The violation of Plaintiff's rights, as described in part above, occurred under color of state law, and is actionable under 42 U.S.C. §1983.   Defendant is a person under applicable law.

64.     The foregoing actions of Defendants were willful, wanton, and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification.

65.     The use of excessive force by Defendants is not part of the penalty that citizens have to pay prior to, during and/or after being charged with a juvenile or criminal offense, and determines a cognizable claim in violation of the Fourth Amendment.

66.     Defendant knew or should have known that the actions against Plaintiff were excessive given the clearly established law.

67.     Based upon the facts presented to Defendant and the applicable law, no reasonable law enforcement officer could have concluded that there existed any reasonable cause or legal basis for battering Plaintiff after he was subdued by kneeing and hitting him, participating in if not inciting the K-9 to attack and bite him, and cuffing him after he told Kessling that his arm was broken.  The law was settled and clearly established that these actions by Defendant Kessling constituted excessive force under the Fourth and Fourteenth Amendments at the time the acts were committed.

68.     The actions or inactions of Defendant, set forth in part above, constituted deliberate indifference and/or reckless disregard for Plaintiff's

constitutional rights when Defendants knew of and disregarded Plaintiff's rights, and thus Defendant's actions or inactions constituted the use of excessive force.

69.    Defendant was acting under color of state law at all pertinent times. His use of excessive force violated the proscription thereof set forth in the Fourth and Fourteen Amendments.  Defendant misused his power, possessed by virtue of state law and made possible only because of the authority of state law.

70.    The foregoing actions of Defendants were willful, wanton, and in reckless disregard of Plaintiff's rights.

71.    As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include physical pain, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future. Defendants are jointly and severally liable to Plaintiff under this count.  Plaintiff is entitled to punitive damages.

**COUNT VI**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**
**Against Defendant KESSLING**

72.    Plaintiff re-alleges paragraphs 1 through 19 as if fully set forth herein.

73.    At all times material, Defendant had a duty under the Constitution of the United States of America to provide adequate medical care to those arrestees,

including Plaintiff, in the custody of Defendant Sheriff. Defendant is a person under applicable law.

74. At all times material, Defendant had a duty under the Fourteenth Amendment to the United States Constitution, not to be deliberately indifferent to the known serious medical needs of an arrestee in the custody of the Defendant Sheriff.

75. Defendant denied Plaintiff medical care for his broken arm when he told the hospital to only treat Plaintiff's dog bites but not his broken arm which left Plaintiff in severe pain and with permanent damage including but not limited to pain and an improper healing requiring surgery.

76. Defendant Kessling was deliberately indifferent to Plaintiff's medical needs. The Defendant was aware of Plaintiff's injuries, as evidenced by him being aware of Plaintiff's broken arm and refusing to allow the medics on the scene of the injury to treat his broken arm and refusing to permit the hospital to treat his broken arm. Defendant was aware that Plaintiff was at a risk of serious harm and continued pain if Plaintiff did not receive immediate treatment.

77. Plaintiff's medical diagnosis and condition or conditions was known or knowable to Defendant all times material. Despite the actual or imputed knowledge of the serious risk to Plaintiff's health, Defendant, through his deliberate indifference, failed or refused to provide Plaintiff with access to medical care

requested and needed by Plaintiff.  Had Defendant ensured that Plaintiff was properly treated in a timely manner, Plaintiff's pain and injuries would have been alleviated or limited.

78.     As a direct, proximate, and foreseeable result of Defendant's deliberate indifference to Plaintiff's known serious medical needs, Plaintiff has suffered the injuries described in this complaint, including bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, expenses of medical and nursing care and treatment, and other losses, including the aggravation of pre-existing conditions. These injuries and losses are continuing, and Plaintiff will suffer such losses in the future.

**COUNT VII**
**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS AGAINST THE SHERIFF FOR THE ACTIONS OF KESSLING AT THE SCENE OF THE ARREST AND HOSPITAL**

79.     Paragraphs 1 through 19 are re-alleged and incorporated herein by reference.

80.     At all times material, Defendant had a duty under the Fourth and Fourteenth Amendments to the United States Constitution to provide adequate medical care and not be deliberately indifferent to the known serious medical needs of arrestees, including Plaintiff, when Kessling denied Plaintiff medical care when the medics/EMS were at the scene of the incident where Plaintiff broke his arm and again when Plaintiff was taken to the hospital and Kessling told the

hospital staff that Plaintiff's arm could not be treated because neither he nor the Sheriff's Office were responsible for that injury, allowing the hospital to treat only his dog bites.  This deliberate act of denying Plaintiff medical care at the hospital plagued Plaintiff's later treatment at the jail and resulted in Plaintiff suffering pain and permanent bodily injury to his arm.  Defendant is a person under the laws applicable to this claim.

81.     Defendant Kessling knew that Plaintiff needed medical attention to his arm but refused to allow the medics/EMS to treat his arm and then refused him treatment at the hospital.  The refusal to obtain medical care for Plaintiff after notice of his injury resulted in further injury to Plaintiff.

82.     Defendant was aware of Plaintiff's condition and that he was in need of medical care and treatment because Plaintiff told Kessling that his arm was broken and that he was in severe pain.

83.     Plaintiff's pain and broken arm were known to Defendant Sheriff at all times material hereto, through Kessling.  Despite his actual or imputed knowledge of the serious risk to Plaintiff's health, Defendant, intentionally or through deliberate indifference, failed or refused to provide Plaintiff with access to necessary medical care and treatment.

84.     Additionally, had Defendant Sheriff ensured that Plaintiff was properly treated in a timely manner, his permanent injury would have been avoided.

85.     Defendant further operated to violate Plaintiff's rights to be free from deliberate indifference to medical care under the Fourteenth Amendment to the United States Constitution, bought through 42 U.S.C. §1983.

86.     Defendant Kessling was Defendant Sheriff's delegated final policymaker for the decision as to whether Plaintiff received medical care from the medics/EMS at the scene and whether he received medical care from the hospital on the date of the injury.

87.     Kessling was the sole and final policymaker with respect to whether Plaintiff received medical care from the medics/EMS at the scene and whether he received medical care from the hospital on the date of the injury and made the determination as to when and whether Plaintiff was permitted to have medical care. He was the delegated final policy maker regarding whether Plaintiff received medical care prior to being placed in the jail and made the discretionary decision as to whether medical care was provided to Plaintiff then.  Kessling was thus the Sheriff's delegated final policy maker regarding the medical care and treatment of Plaintiff prior to being incarcerated inside the Leon County Jail  and was the gate keepers regarding whether Plaintiff received medical care from the medics/EMS

22

and the hospital.  The only way that Plaintiff could receive medical care from the medics/EMS was through the approval of Plaintiff, which he refused.  As such, he was the final policymakers in the actions taken with respect to Plaintiff and the medical care and attention that he received and had knowledge of the risks of harm to Plaintiff but ignored them.

88.     Kessling made the final decision about the care and treatment of Plaintiff that led to pain and bodily injury to him.

89.     Kessling's decisions about the medical care that Plaintiff did not receive were not reviewed by any higher level authority within the Defendant Sheriff and thus Kessling's actions were not constrained by official policies nor were they subject to review or supervision.

90.     Defendant Sheriff is liable to Plaintiff for Defendant Kessling's conduct, which violated the civil rights of Plaintiff under the Fourteenth Amendments to the United States Constitution.

91.     Defendant Sheriff misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.  Defendant Sheriff is a person under the laws applicable to this action.

92.     The foregoing actions of Defendant were willful, wanton and in reckless disregard of Plaintiff's rights and constitute the deliberate indifference in the denial of medical care to him.

93.     Based upon the facts presented to Defendant, no reasonable person could have concluded that denying and/or depriving Plaintiff of medical and other care for his condition and ongoing medical problems were lawful or permissible behaviors under the United States Constitution at the time the actions by this Defendant were committed.

94.     The actions or inactions of this Defendant as set forth in part above constituted the deliberate indifference or reckless disregard for the safety of Plaintiff when he knew of and disregarded severe risks to Plaintiff's health and safety.

95.     Defendant Sheriff, through Kessling acted with deliberate indifference in the failure to adopt a policy and/or adopting an inadequate policy and/or failing to follow an existing policy for incidents like that described herein when it was obvious that the likely consequences of its failures in treating injured arrestees would be a deprivation of civil rights, and Defendant deliberately failed to provide Plaintiff with adequate medical care for his serious medical needs.  These policies or lack thereof were the moving force behind the constitutional deprivations to Plaintiff.  Defendant's failure to adopt policies and/or its inadequate policies and/or

the failure to enforce existing policies to ensure inmates received medical attention for injuries constituted deliberate indifference to Plaintiff's constitutional rights.

96.     Kessling was the delegated final policy makers for the Sheriff regarding the care and treatment Plaintiff received prior to admission into the Leon County Jail and blocked Plaintiff's ability to obtain medical care which resulted in pain and permanent injury.  Defendant Sheriff is liable to Plaintiff herein because of the actions of his delegated final policymaker, whose actions resulted in the constitutional violations alleged herein.

97.     As a direct and proximate cause of Defendant's actions, Plaintiff has sustained damages including, but not limited to, bodily injury, medical and other expenses, loss of enjoyment of life, pain and suffering, mental anguish, and related non-economic damages.  These damages have occurred in the past, at present and into the future.  Furthermore, Plaintiff has retained the undersigned to represent his interests in this case and is obligated to pay a reasonable fee for these services. Defendant should be made to pay said fee and all costs associated with this action.

**COUNT VIII**
**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS AGAINST THE SHERIFF FOR THE ACTIONS OF DEFENDANT SHERIFF WHILE PLAINTIFF WAS INCARCERATED IN THE JAIL**

98.     Paragraphs 1 through 18 are re-alleged and incorporated herein by reference.

99.    At all times material, Defendant had a duty under the Fourth and Fourteenth Amendments to the United States Constitution to provide adequate medical care and not be deliberately indifferent to the known serious medical needs of inmates, including Plaintiff, after notice of the need for medical care after Plaintiff was incarcerated in the jail.

100.    When Plaintiff was returned to the jail from the hospital, for a period of approximately six months, Plaintiff and a friend, who was outside the jail, repeatedly requested care and treatment for Plaintiff's broken arm.  That treatment was denied even after Plaintiff's friend talked to the captain over the jail whose response was that Plaintiff should not have gotten himself in trouble to be in jail to begin with.  The main reason given for the denial of care outside the jail, as the jail did not have the capability to treat Plaintiff's arm, was that he had already been seen at the hospital and there was nothing further the jail could do.

101.    But Plaintiff advised both correctional officers and medical staff that his arm had not been treated at the hospital.  Medical care was thereafter still denied although Defendant was repeatedly placed on notice, through Plaintiff and his friend, that Plaintiff was in pain and suffering due to the failure of Defendant to treat his broken arm.

102.    Plaintiff's pain and broken arm were known to Defendant Sheriff at all times material hereto, through multiple requests for treatment and care by both

Plaintiff and his friend.  Despite its actual or imputed knowledge of the serious risk to Plaintiff's health, Defendant, intentionally or through deliberate indifference, failed or refused to provide Plaintiff with access to necessary and appropriate medical care and treatment.

103.   Had Defendant Sheriff ensured that Plaintiff was properly treated in a timely manner, his permanent injury would have been avoided.

104.   Defendant further operated to violate Plaintiff's rights to be free from deliberate indifference to medical care under the Fourteenth Amendment to the United States Constitution, bought through 42 U.S.C. §1983.

105.   Defendant Sheriff is liable to Plaintiff for the failure to obtain medical care and treatment when he was incarcerated in the jail, which violated the civil rights of Plaintiff under the Fourteenth Amendments to the United States Constitution.  Defendant Sheriff is liable because of the wholesale failure, over a six month period, to provide Plaintiff with medical treatment after notice to the captain over the jail and multiple other correctional officers of Plaintiff's need for medical care and treatment.  The multiple weekly complaints put a responsible supervisor, including the captain over the jail, on notice of the need to correct the unconstitutional denial of medical care to Plaintiff but he failed to do so.

106.   Defendant Sheriff misused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The

violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

107.   The foregoing actions of Defendant were willful, wanton and in reckless disregard of Plaintiff's rights and constitute the deliberate indifference in the denial of medical care to him.

108.   Based upon the facts presented to Defendant, no reasonable person could have concluded that denying and/or depriving Plaintiff of medical and other care for his condition and ongoing medical problems were lawful or permissible behaviors under the United States Constitution at the time the actions by this Defendant were committed.

109.   The actions or inactions of this Defendant as set forth in part above constituted the deliberate indifference or reckless disregard for the safety of Plaintiff when he knew of and disregarded severe risks to Plaintiff's health and safety.

110.   Defendant Sheriff, through his employees and jail captain who spoke to Plaintiff's friend about the failure to provide Plaintiff with medical care for his arm, acted with deliberate indifference in the failure to adopt a policy and/or adopting an inadequate policy and/or failing to follow an existing policy for incidents like that described herein when it was obvious that the likely consequences of its failures in treating injured inmates would be a deprivation of

civil rights, and Defendant deliberately failed to provide Plaintiff with adequate

medical care for his serious medical and other needs.  These policies or lack

thereof were the moving force behind the constitutional deprivations to Plaintiff.

Defendant's failure to adopt policies and/or their inadequate policies and/or the

failure to enforce existing policies to ensure inmates received medical attention for

injuries and illnesses constituted deliberate indifference to Plaintiff's constitutional

rights.

111.   Further, Defendant Sheriff, through his employees, operated under a

policy or a custom in failing to take action to obtain medical care for inmates such

as Plaintiff and of refusing medical care despite knowledge of their need for

treatment, as evidenced by the period of six months that Plaintiff was incarcerated

in Defendant Sheriff's jail without treatment after repeated notice of his need for

medical care.

112.   Defendant Sheriff was also deliberately indifferent in failing to

implement adequate hiring, training, staffing and supervisory procedures, on how

to properly classify inmates like Plaintiff who was placed in a pod, not the medical

unit despite his injuries, initiate and follow medical protocols and/or to respond to

an inmate's need for medical attention.

113.   As a direct and proximate cause of Defendant's actions, Plaintiff has

sustained damages including, but not limited to, bodily injury, medical and other

expenses, loss of enjoyment of life, pain and suffering, mental anguish, and related non-economic damages.  These damages have occurred in the past, at present and into the future.  Furthermore, Plaintiff has retained the undersigned to represent his interests in this case and is obligated to pay a reasonable fee for these services. Defendant should be made to pay said fee and all costs associated with this action.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for the following relief:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendants and for Plaintiff awarding damages to Plaintiff from Defendants for Defendant's violations of law enumerated herein;

(d)   enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e)  enter judgment against Defendants and for Plaintiff awarding

Plaintiff attorney's fees and costs; and

(f)  grant such other further relief as being just and proper under the

circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demand a trial by jury on all issues set forth herein which

are so triable.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing has
been furnished to all counsel of record by CM/ECF this 25th day of June, 2024.

/s/ Marie A. Mattox
Marie A. Mattox